UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Donnie Mack Sellers,                    )
                                        )
          Plaintiff,                    )
                                        )
          v.                            )       Civ. Action No. 16-2271 (UNA)
                                        )
United States *et al.*,                 )
                                        )
          Defendants.                   )
_____         )

## MEMORANDUM OPINION

This matter is before the Court on initial review of plaintiff's *pro se* complaint and application for leave to proceed *in forma pauperis*. For the reasons explained below, the *in forma pauperis* application will be granted and this case will be dismissed pursuant to 28 U.S.C. § 1915A, which requires immediate dismissal of a prisoner's complaint that fails to state a claim upon which relief can be granted or is frivolous.

"A complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff is a Montana state prisoner. He sues the United States, several federal agencies, and Montana Governor Steve Bullock, for injunctive relief. *See* Compl. at 1-2.

Plaintiff states that he "is a 100% disabled veteran with brain injury." Compl. ¶ 14. He alleges the following occurrences with regard to the United States. While incarcerated in Montana, plaintiff learned "of homegrown/alien-foreign terror activities being planned/conducted on U.S. soil in several states," including Montana. Compl. at 1. In addition, plaintiff "has knowledge of

1

several Muslims in the United States [who] are not homegrown who share the beliefs and brotherhood of Al Queda, ISIS, and other Muslim cult branches," one of whom is alleged to be "the uncle of the Nigerian kid [who] tried to blow up the Delta airliner over Detroit a while back, who resides in Texas, but also has homes in New York, London, and Nigeria. *Id.* ¶¶ 16-17. Plaintiff claims to have "certified mail receipts," showing that "he *tried* to report what he knew to the FBI and Homeland Security before he ran afoul of the law of Montana," but "[n]either defendant responded in any manner." *Id.* ¶¶ 20-21 (emphasis added). Despite his "communication problems due to [his] brain injury," plaintiff "believes he was explicit to these defendants." *Id.* ¶ 22.

As to Governor Bullock, plaintiff alleges that Bullock is a member of "a deeply entrenched generations old 'Montana Organized Consanguinity/ Kindred Administrations (MOCKA)," who has "abdicate[d] all his powers and responsibilities to [MOCKA] without any type of supervision or accountability." Compl. ¶¶ 29, 31. Plaintiff contends that "a lot of Montana state entities," including the Department of Corrections, "are operated by [MOCKA]. *Id.* ¶ 29. "The gist of this complaint," then, "is the fact that because of this organized crime families [sic] operating the states [sic] prison system for profit," plaintiff "is unable to communicate and report to the named defendants hereof the danger as explained above." *Id.* ¶ 33. The conspiratorial allegations continue for an additional twenty or more paragraphs.

As relief, plaintiff seeks (1) a "protective order . . . until a proper investigation and/or trial can be conducted"; (2) an order "to all defendants to work together and conduct a system that allows inmates with knowledge about illegal aliens and activities on U.S. soil to report to them at least by U.S. mail in a manner that organized crime families like the MOCKA system in Montana cannot block or interfere; and (3) an order compelling the United States Department of Justice to

investigate "the corruption, lies, deceit, racketeering, and murders being conducted in Montana by the MOCKA families as state employees under state law and federal employees under federal law in partnership." Compl. at 13-14.

Complaints lacking "an arguable basis either in law or in fact" are subject to dismissal as frivolous. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "In determining whether a particular . . . complaint is frivolous . . ., the threshold issue for the trial court is an assessment of the substance of the claim presented, *i.e.*, is there a factual and legal basis . . . for the asserted wrong, however inartfully pleaded." *Crisafi v. Holland*, 655 F.2d 1305, 1307 (D.C. Cir. 1981), quoting *Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976)). Plaintiff's allegations are the type of "fantastic or delusional scenarios" warranting dismissal on frivolous grounds. *Neitzke*, 490 U.S. at 328; *cf. Best v. Kelly*, 39 F.3d 328, 330-31 (D.C. Cir. 1994) (a court may dismiss claims that are "essentially fictitious"-- for example, where they suggest "bizarre conspiracy theories . . . [or] fantastic government manipulations of their will or mind") (citations and internal quotation marks omitted); *Crisafi*, 655 F.2d at 1307-08 ("A court may dismiss as frivolous complaints . . . postulating events and circumstances of a wholly fanciful kind.").

Even if plaintiff's allegations were plausible, this Court would have no authority to grant the requested relief. The United States Attorney General has absolute discretion in deciding whether to investigate claims for possible criminal or civil prosecution. As a general rule applicable here, such decisions are not subject to judicial review. *Shoshone-Bannock Tribes v. Reno*, 56 F.3d 1476, 1480-81 (D.C. Cir. 1995). And the Eleventh Amendment to the U.S. Constitution immunizes Governor Bullock, who is sued at best in his official capacity, from this

lawsuit.[1] Therefore, this case will be dismissed. A separate order accompanies this Memorandum Opinion.

United States District Judge

DATE: October __5__, 2017

---

[1]    The amendment provides in pertinent part: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. It is long established that this amendment applies equally to suits brought by citizens against their own states. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Hans v. Louisiana*, 134 U.S. 1, 13-15 (1890).